# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | : | |
| In re WIRELESS TELEPHONE RADIO | : | |
| FREQUENCY EMISSIONS PRODUCTS | : | MDL No. 1421 |
| LIABILITY LITIGATION | : | Civil No. 01-MD-1421 |
| | : | |
| ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| *Murray, et al. v. Motorola, Inc. et al.* (D.D.C.) | : | *Civil No. CCB-02-4047* |
| *Schofield v. Matsushita Electric, et al.* (D.D.C.) | : | *Civil No. CCB-02-4048* |
| *Cochran, et al. v. Audiovox Corp., et al.* (D.D.C.) | : | *Civil No. CCB-02-4049* |
| *Keller, et al. v. Nokia, Inc., et al.* (D.D.C.) | : | *Civil No. CCB-02-4050* |
| *Schwamb, et al. v. Qualcomm, et al.* (D.D.C.) | : | *Civil No. CCB-02-4051* |
| *Agro, et al. v. Motorola, Inc., et al.* (D.D.C.) | : | *Civil No. CCB-02-4052* |

## MEMORANDUM

On June 21, 2002, a consolidated and renewed motion for remand filed in the Pinney, Farina,

Gilliam, Gimpelson, and Naquin actions in this multidistrict litigation was denied.[1]  I held that federal

question jurisdiction supported removal based on the substantial federal question doctrine.  In re

Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig., 216 F. Supp. 2d 474 (D. Md. 2002).[2]

The prior remand decision did not address similar motions to remand now pending in the Murray,

Schofield, Cochran, Keller, Schwamb, and Agro actions.[3]  The plaintiffs filed these suits in the Superior

---

[1]  The five class actions that were addressed in that decision are referred to collectively as the "Pinney complaints," "Pinney actions," or "Pinney plaintiffs."

[2]  The defendants in those five actions then filed a motion to dismiss under several theories of preemption, which was granted on March 5, 2003.  In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig., 248 F. Supp. 2d 452 (D. Md. 2003).

[3]  The plaintiffs in these six actions all are represented by the law firm of Morganroth & Morganroth, PLLC.  The allegations in their complaints are essentially the same, with minor variations in

Court for the District of Columbia, alleging state statutory and common law claims. The defendants

filed notices of removal under 28 U.S.C. § 1441(b), asserting federal jurisdiction under several different

theories, and the cases were removed to the United States District Court for the District of Columbia.[4]

The Judicial Panel on Multidistrict Litigation subsequently transferred the cases to this court. The issues

in the plaintiffs' motions to remand have been fully briefed and no hearing is necessary. See Local Rule

105.6.[5]

    As with the Pinney complaints, the crux of the Morganroth complaints is that the defendants

have negligently and fraudulently endangered consumers by providing wireless cell phones that emit

unsafe levels of radio frequency radiation ("RFR"). The Morganroth complaints assert similar causes of

action to those raised in the Pinney complaints: (1) intentional fraud and misrepresentation; (2) negligent

misrepresentation; (3) strict product liability, and product liability for failure to warn and design defect;

(4) negligence; (5) breach of express and implied warranties; (6) civil conspiracy; (7) violations of the

District of Columbia Consumer Protection Act of 2000; and (8) civil battery.[6] Unlike the Pinney

plaintiffs, however, the lead plaintiffs in the Morganroth complaints have been diagnosed with brain

---

the facts that are specific to each plaintiff. For purposes of this memorandum, the court will use the
Murray complaint as representative of these six actions. These actions will be referred to collectively as
the "Morganroth complaints," "Morganroth actions," or "Morganroth plaintiffs."

    [4] The motions to remand in the Morganroth actions were consolidated for briefing in the United
States District Court for the District of Columbia, prior to their transfer to this court.

    [5] Also still pending are motions to remand in the Brower and Dahlgren actions, which are not
addressed in this memorandum. See infra note 9.

    [6] Many of the Morganroth plaintiffs also seek relief for loss of consortium, where applicable.

cancer, which they attribute to exposure to RFR from the use of their cell phones.[7]  While the Pinney

plaintiffs' requests for relief were focused on the provision of headsets for use with their cell phones,[8]

the Morganroth plaintiffs seek compensatory and consequential damages for the lead plaintiffs' brain

injuries.  Based on these critical factual differences, I will grant the plaintiffs' motions to remand the

Morganroth actions to the Superior Court for the District of Columbia.[9]

## BACKGROUND

The comprehensive federal regulatory scheme governing the licensing and RFR emissions of cell

phones was discussed in the court's earlier remand decision and need not be repeated in full here.  See

Wireless Tel., 216 F. Supp. 2d at 482-87.  Most pertinent to this litigation, the Federal

Communications Commission ("FCC") has issued regulations which set a maximum localized specific

absorption rate ("SAR") for RFR emissions from cell phones, require cell phone manufacturers to

---

[7] The Pinney complaints were brought on behalf of purchasers of cell phones who were not furnished with a headset and "who have not been diagnosed with a brain related tumor or cancer of the eye," as well as all future purchasers who have not received such a diagnosis.  (Pinney Compl. at ¶ 42.)

[8] Specifically, the Pinney complaint sought: (1) compensatory damages for each class member to purchase a headset; (2) reimbursement for costs incurred by each class member in purchasing a headset; (3) injunctive relief to provide class members with a cell phone that could be used with a headset, instructions for a headset, and warnings about why a headset should be used; and (4) injunctive relief preventing the future sale of cell phones without headsets and appropriate instructions and warnings.  (Pinney Compl. at ¶¶ 100, 109, 114, 121, 133, 142, 149, 163.)  At a hearing before this court, the Pinney plaintiffs conceded that all of their requests for relief, even those for compensatory damages, amounted to a judicially-imposed requirement that manufacturers provide headsets with wireless cell phones.  See Wireless Tel., 216 F. Supp. 2d at 491 n.20.

[9] The prior remand decision has been appealed to the Fourth Circuit, and the defendants support a stay of a decision on the pending remand motions until the Fourth Circuit issues a decision.  The Brower plaintiffs agreed to a stay, and the Dahlgren plaintiff do not object.  The Morganroth plaintiffs, however, oppose any further stay in the proceedings.  Recognizing that the Morganroth actions involve distinguishable issues, a decision on these remand motions is warranted at this time.

perform routine environmental evaluation for RFR emissions prior to equipment authorization or use,

and allow manufacturers to demonstrate compliance by "laboratory measurement techniques or by

computational modeling." See 47 C.F.R. §§ 2.1091, 2.1093.[10]  These regulations were adopted under

authority derived from the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321,

et seq., as well as the Telecommunications Act of 1996, Pub. L. No. 104-104, § 704(b), 110 Stat. 56,

152.  They are part of a comprehensive regulatory scheme which authorizes the FCC to set technical

standards for wireless telecommunications, in order to achieve nationwide compatibility and to foster

the growth of wireless services.  See Wireless Tel., 216 F. Supp. 2d at 483-84.

The regulations on RFR emissions were issued by the FCC after careful consideration of the

views of various federal health and safety agencies, and they reflect a consensus view of those agencies.

 See id. at 485-87.  Particular weight was given to the views of the Food and Drug Administration

("FDA"), which has responsibility, under the Electronic Product Radiation Control Act, 21 U.S.C. §

360kk, in consultation with other agencies, for setting standards to protect the public health from

electronic products that emit radiation.  See Wireless Tel., 216 F. Supp. 2d at 485-87; see also In re

Procedures for Reviewing Requests for Relief from State and Local Regulations Pursuant to Section

332(c)(7)(B)(v) of the Communications Act of 1934, 13 F.C.C.R. 7,268, at ¶¶ 5, 19, 30-31, 34, 36-

---

[10]  As stated in the court's earlier opinion, "'SAR is a measure of the rate of energy absorption
due to exposure to an RF transmitting source.'" Wireless Tel., 216 F. Supp. 2d at 485 n. 7 (quoting 47
C.F.R. § 2.1093(d)).  The RFR regulations are being implemented through the existing, comprehensive
FCC system for equipment authorization and compliance monitoring.  See 47 C.F.R. §§ 2.1093(d),
2.901, et seq.  The defendants must comply with these requirements in order to make their phones
available to the public.

39, 111, 114 (1997) (hereinafter "FCC Second Order"); In re Guidelines For Evaluating the Envtl.

Effects of Radiofrequency Radiation, 11 F.C.C.R. 15,123, at ¶¶ 2, 18, 28, 49, 62, 71, 73 (1996)

(hereinafter "FCC First Order"); FCC & FDA, Cell Phone Facts: Consumer Info. on Wireless Phones,

available at www.fda.gov/cellphones/qa.html.

      As in the court's earlier opinion, it is necessary to review the plaintiffs' claims before determining

whether those claims provide a basis for federal jurisdiction.  The Morganroth actions are brought on

behalf of individuals (and, in applicable cases, their spouses) who have purchased and used cell phones,

have been diagnosed with brain cancer, and now are permanently disabled.  (Murray Compl. at ¶ 22-

30.)  The lead plaintiffs allege that their brain injuries directly resulted from exposure to RFR emissions

from their cell phones.  (Id.)  They seek compensatory, consequential, and punitive damages for their

individual injuries.  (Id. at ¶¶ 81, 87, 94, 101, 105, 112, 118, 131, 140, 148.)  It is important to note

that the Morganroth complaints are not brought as class actions.

      As in the Pinney actions, the Morganroth plaintiffs allege that cell phones cause adverse health

effects for users and are a "defective and dangerous" product, conclusions which are at odds with the

FCC and FDA's own factual determinations.[11]  (Id. at ¶¶ 29-30, 36-38, 42, 55, 90, 92, 110, 117.)

They claim that the defendants have manipulated research about the health effects of RFR emissions

from cell phones (id. at ¶¶ 43-44, 60, 121(b), 125), misled standards-setting bodies (id. at ¶¶  45(b)-

---

     [11]  The position of the FCC and the FDA can be summed up as follows: "The available
scientific evidence does not show that any health problems are associated with using wireless phones.
There is no proof, however, that wireless phones are absolutely safe."  FCC & FDA, Cell Phone
Facts: Consumer Information on Wireless Phones, "Questions and Answers: Do wireless phones pose
a health hazard?" available at www.fda.gov/cellphones/qa.html.

(e), 124), and sought to "co-opt" federal agencies and mislead and deceive governmental officials (id. at ¶¶ 45, 124). According to the complaints, the defendants have not adequately informed or disclosed to the public the potential adverse health effects of RFR emissions from cell phones (id. at ¶¶ 43, 44(a), 57-58, 60-61, 71, 74(a)-(b), (d), (g)-(h), 98, 103(b), (d)-(e), 121(a)-(c), 127), and have misled the public by representing that FCC-compliant cell phones are safe and cause no adverse health effects (id. at ¶¶ 55-59, 71-73, 74(c), 98, 107, 114, 126), and specifically by stating that "Federal governmental agencies" have found that cell phones do not "present a risk of harm to the user" (id. at ¶ 74(i)).

While the Pinney complaints focused on the manufacturers' failure to incorporate headsets into their cell phones, the Morganroth complaints allege in broader terms that the manufacturers have failed to incorporate various protective devices and design changes that could reduce RFR exposure. (Id. at ¶¶ 39, 46, 52, 74(e)-(f), 96, 103(c), 109, 121(d).) The Morganroth plaintiffs also allege that the current testing methods employed by the defendants for measuring SAR are not accurate or reliable and easily can be manipulated (id. at ¶¶ 40, 46-51, 61(d)-(h), 74(b), 97, 103(a), 121(a)),[12] and that the current SAR exposure limit is inadequate to protect human health (id. at ¶¶ 41, 73(b), 97).

As illustrated by these allegations, "the plaintiffs' suits, though couched in the language of state tort and contract law, have only one goal–to challenge in state court the validity and sufficiency of the federal regulations on radio frequency radiation from wireless phones." Wireless Tel., 216 F. Supp. 2d

---

[12] The FCC regulations allow manufacturers to choose among available laboratory measurement techniques or computational modeling in order to demonstrate compliance with the SAR standard. See 47 C.F.R. § 2.1093(d)(3); FCC First Order at ¶¶ 65, 69-70. The plaintiffs also allege that actual emissions levels from cell phones are higher than the reported SAR levels (Murray Compl. at ¶ 51), which are provided to the FCC as part of the equipment authorization process. See 47 C.F.R. § 2.1091(c), 2.1093(c)

at 479.  The gravamen of the Morganroth complaints is that federal safety regulations governing

wireless cell phones permit the sale of a product that is unreasonably dangerous to consumers.  In many

respects the arguments in favor of exercising jurisdiction over these complaints are just as strong as in

the Pinney actions.  The Morganroth complaints involve distinguishable facts, however, requiring

remand to state court.

## ANALYSIS

State court actions which originally could have been filed in federal court may be removed to

federal court by the defendant pursuant to 28 U.S.C. § 1441.  Caterpillar, Inc. v. Williams, 482 U.S.

386, 392 (1987); Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir.1994).

 Section 1441 provides, in pertinent part, that "any civil action brought in a state court of which the

district courts of the United States have original jurisdiction, may be removed by the defendant or the

defendants, to the district court of the United States for the district and division embracing the place

where such action is pending."  Absent diversity of citizenship, the propriety of removal under § 1441

depends on whether the action is one "arising under the Constitution, laws, or treaties of the United

States," as set forth by 28 U.S.C. § 1331.  Mulcahey, 29 F.3d at 151.

"[F]ederal question jurisdiction is determined by the well-pleaded complaint rule, which

provides that the federal question must be presented on the face of the plaintiff's properly pleaded

complaint to confer jurisdiction, and the plaintiff may avoid federal jurisdiction by relying exclusively on

state law."  Owen v. Carpenters' Dist. Council, 161 F.3d 767, 772 (4th Cir. 1998) (internal quotations

and citation omitted).  Ordinarily, therefore, the plaintiff as "the master of his complaint" may select a

state forum by choosing to rely on state law claims only, even if the facts alleged also would support a claim under federal law.  See Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 22 (1983); Custer v. Sweeney, 89 F.3d 1156, 1165 (4th Cir. 1996).  Removal jurisdiction raises "significant federalism concerns," and therefore must be strictly construed.  Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir.  2004) (en banc) (quoting Mulcahey, 29 F.3d at 151).  The burden of establishing federal jurisdiction is on the party seeking removal.  Id.  If the claim to federal jurisdiction is doubtful, then the court must remand the action to state court.  Id.

Recognizing that the complaints do not on their face allege any federal claims, the defendants seek to invoke three removal doctrines to support federal question jurisdiction: substantial federal question, complete preemption, and artful pleading.  The defendants also maintain that, in complying with the FCC's regulations on RFR emissions from wireless phones, they were "acting under" a federal officer for purposes of 28 U.S.C. § 1442(a)(1).  Each of these potential bases for federal jurisdiction is considered below.

## I.  Federal Officer Provision

The defendants argue that removal is proper under 28 U.S.C. § 1442(a)(1), which provides that a state court action may be removed by "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office."  In order to establish removal jurisdiction under this provision, the defendants must (1) raise a colorable federal defense to the plaintiffs' claims; (2) show that they were acting under the direction of a federal officer; and (3) demonstrate a causal nexus between plaintiffs' claims and acts they

performed under color of federal authority.  <u>Pack v. AC & S, Inc.</u>, 838 F. Supp. 1099, 1101 (D. Md.

1993) (citing <u>Mesa v. California</u>, 489 U.S. 121, 124-25 (1989)); <u>see also</u> <u>Freiberg v. Swinerton &</u>

<u>Walberg Prop. Servs., Inc.</u>, 245 F. Supp. 2d 1144, 1149-50 (D. Colo. 2002) (citing cases).  As in the

prior remand decision, the defendants have failed to meet the last two requirements.

     In order for a defendant to be acting under color of federal authority, "[a] substantial degree of

direct and detailed federal control over the defendant's work is required."  <u>In re "Agent Orange" Prod.</u>

<u>Liab. Litig.</u>, 304 F. Supp. 2d 442, 447 (E.D.N.Y. 2004).  "'Direct control' is established by showing

strong government intervention and the possibility that a defendant will be sued in state court as a result

of the federal control."  <u>Pack</u>, 838 F. Supp. at 1103.  In <u>Freiberg</u> the court explained:

> The established rule is that removal by a person "acting under" a federal officer must be predicated on a showing that the acts forming the basis of the state suit were performed pursuant to an officer's "direct orders or comprehensive and detailed regulations." <u>Ryan v. Dow Chem. Co.</u>, 781 F. Supp. 934, 947 (E.D.N.Y. 1992).  It is not enough to prove only that "the relevant acts occurred under the general auspices of a federal office or officer" or that "a corporation participates in a regulated industry." <u>Id.</u>  The official must have direct and detailed control over the defendant. <u>Good v. Armstrong World Indus., Inc.</u>, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996).

245 F. Supp. 2d at 1152; <u>see also</u> <u>Arness v. Boeing N. Am., Inc.</u>, 997 F. Supp. 1268, 1273 (C.D.

Cal. 1998).

     The defendants argue that removal under § 1442(a)(1) is proper because the FCC regulations

specifically direct the defendants to manufacture, test, and sell only cell phones emitting approved levels

of RFR.  (<u>Murray</u> Def.'s Joint Opp. Mem., 3/8/02, at 41-45.)[13]  The defendants have not shown,

---

[13]  The defendants have adopted the arguments initially raised in briefing on the motion to remand in the <u>Murray</u> action for all of the Morganroth actions.  (Morganroth Defs.' Consol. Opp.

however, that they were "acting under" federal officials with respect to the specific acts for which they are being sued. As to the testing process employed by the defendants, the FCC's general guidance that "[c]ompliance with SAR limits can be demonstrated by either laboratory measurement techniques or by computational modeling" is not sufficiently comprehensive or detailed to invoke the federal officer provision. 47 C.F.R. § 2.1093(d)(3). The Morganroth complaints also are based in large part on the defendants' failure to provide safety devices, warnings, or instructions to consumers. To support removal jurisdiction as to these allegations, the defendants must show not only that the phones were manufactured according to FCC specifications, but also that the FCC restricted or prohibited them from providing additional safeguards or information to consumers. Cf. Faulk v. Owens-Corning Fiberglass Corp., 48 F. Supp. 2d 653, 663-64 (E.D. Tex. 1999); Arness, 997 F. Supp. at 1275; Ruffin v. Armco Steel Corp., 959 F. Supp. 770, 774 (S.D. Tex. 1997), opinion vacated by Ruffin v. Armco Steel Corp., 1999 WL 318023 (S.D. Tex. 1999) (when the case was transferred by the Judicial Panel on Multidistrict Litigation). Defendants have failed to show this. Accordingly, removal based on the federal officer provision is improper.

## II. Artful Pleading

The defendants refer to the doctrine of "artful pleading" as supporting removal of the

---

Mem., 6/26/02, at 51.) Consolidated briefing in the Morganroth actions also raised the argument that defendants ANSI and the IEEE fall within the scope of the federal officer provision based on their roles in developing the SAR standard adopted by the FCC, citing Magnin v. Teledyne Cont'l Motors, 91 F.3d 1424 (11th Cir. 1996). (Morganroth Defs.' Consol. Opp. Mem., 6/26/02, at 46-51.) Magnin involved distinguishable facts, in which the FAA had delegated official duties to a private party pursuant to an express Congressional authorization. See 91 F.3d at 1428. In any event, this argument fails for the same reasons as the other arguments cited by the defendants.

Morganroth complaints. This doctrine permits a court to look behind a complaint to determine whether a plaintiff is attempting to conceal the federal nature of his claim by fraud or obfuscation. State of Md. v. Philip Morris Inc., 934 F. Supp. 173, 175 (D. Md. 1996). As I noted in the prior remand decision, artful pleading is not a separate removal doctrine, but rather refers to the manner in which some plaintiffs manage to plead claims that are actually federal (because they are either completely preempted, or based entirely on substantial federal questions) under state law. Wireless Tel., 216 F. Supp. 2d at 492-93. In such cases, a court need not "blind itself to the real gravamen of [the] claim." Philip Morris, 934 F. Supp. at 176 (quoting In re Wiring Device Antitrust Litig., 498 F. Supp. 79, 82 (E.D.N.Y. 1980)). Recent federal court decisions likewise have equated the doctrine of artful pleading with complete preemption or the substantial federal question doctrine. See, e.g., Lippitt v. Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1041-42 (9th Cir. 2003); MSOF Corp. v. Exxon Corp., 295 F.3d 485, 490-91 (5th Cir. 2002); Alshrafi v. Am. Airlines, Inc., --- F. Supp. 2d ---, 2004 WL 1245956, at *3 (D. Mass. 2004); Cavette v. Mastercard Int'l, Inc., 282 F. Supp. 2d 813, 816-17 (W.D. Tenn. 2003).

Thus, the artful pleading doctrine can provide additional support for removal in cases in which federal jurisdiction is based on complete preemption or substantial federal question grounds, and where a plaintiff has pled a state law claim that is actually federal. In the Pinney actions the plaintiffs' artful pleading further warranted removal jurisdiction. Wireless Tel., 216 F. Supp. 2d at 492-93. Rather than directly attacking the FCC regulations in an appropriate federal forum, subject to "the restrictions imposed by the comprehensive regulatory scheme embodied in the Communications Act," those plaintiffs were pursuing stricter safety measures for cell phones under state tort law. Cf. In re Comcast

11

Cellular Telecomm. Litig., 949 F. Supp. 1193, 1204 (E.D. Pa. 1996) (permitting removal of disguised

rate challenge pursuant to artful pleading doctrine).  If the court determines that the Morganroth

plaintiffs, like the Pinney plaintiffs, are seeking to avoid the uniform determination of RFR safety

standards in a federal forum by bringing substantially similar actions in state court, then the artful

pleading doctrine will provide further support for removal jurisdiction.  The doctrine does not provide

an independent basis for removal.

### III.  Complete Preemption

The defendants next argue that removal is proper on the basis of complete preemption.  The

complete preemption doctrine serves as an exception to the well-pleaded complaint rule, allowing

removal of a state claim "when a federal statute wholly displaces the state-law cause of action."

Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003).  Complete preemption is distinct from the

defense of conflict preemption:

> Under ordinary or conflict preemption, "state laws that conflict with federal laws are
> preempted, and preemption is asserted as 'a federal defense to the plaintiff's suit.'"
> Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186-87 (4th Cir. 2002)
> (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63(1987)).  Because conflict
> preemption constitutes a defense to a cause of action, the Supreme Court has
> recognized that it normally "'does not appear on the face of a well-pleaded complaint,
> and, therefore, does not authorize removal to federal court.'"  Id. (quoting Taylor, 481
> U.S. at 63).

Sonoco Prods. Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 370-371 (4th Cir. 2003).  By

contrast, "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which

comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based

on federal law."  Beneficial Nat'l Bank, 539 U.S. at 8.  Such a claim "arises under" federal law for

purposes of 28 U.S.C. § 1331, and thus is removable under 28 U.S.C. 1441.  Id.  In the Morganroth

actions, as in the Pinney actions, the defendants argue that the plaintiffs' claims are completely

preempted by two provisions of the Federal Communications Act ("FCA"): 47 U.S.C. §§ 332(c)(3)

and 332(c)(7)(B)(iv).[14]

In the prior remand decision, I concluded that the defendants had not established the requisite

factors for complete preemption.  Wireless Tel., 216 F. Supp. 2d at 496-99.  Since the Wireless

Telephone opinion, the Supreme Court has restated and extended the doctrine of complete preemption.

In Beneficial National Bank, 539 U.S. at 11, the Court held that the federal National Bank Act

completely preempts any state law claims for usury against national banks chartered under the Act.

The Court stated that a claim is removable to federal court under the complete preemption doctrine

when a federal statute "provide[s] the exclusive cause of action" for the claim.  Id. at 8.  "[T]he proper

inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on

whether Congress intended that the cause of action be removable."  Id. at 9 n.5.  The Court

emphasized that in the facts of that case, as well as in the two prior federal statutes under which the

Court has recognized complete preemption, "the federal statutes at issue. . .set forth procedures and

---

[14]  47 U.S.C. § 332(c)(3)(A) provides in relevant part: "[N]o State or local government shall
have any authority to regulate the entry of or the rates charged by any commercial mobile service or any
private mobile service."  47 U.S.C. § 332(c)(7)(B)(iv) provides: "No State or local government or
instrumentality thereof may regulate the placement, construction, and modification of personal wireless
service facilities on the basis of the environmental effects of radio frequency emissions to the extent that
such facilities comply with the Commission's regulations concerning such emissions."

remedies governing the cause of action." Id. at 8, 9.[15]  Further supporting a finding of complete

preemption under the National Bank Act is the special federal interest in ensuring that national banks

are governed by uniform, national rules limiting their liability, and are protected from "possible unfriendly

State legislation." Id. at 10-11 (quoting Tiffany v. Nat'l Bank of Mo., 18 Wall. 409, 412 (1874)).

    After Beneficial National Bank, I offered the parties in the pending complaints an opportunity to

comment on the implications of that decision for this litigation.  The defendants correctly noted that the

plaintiffs' arguments against complete preemption are weakened somewhat by Beneficial National

Bank, because the complete preemption doctrine has been extended to another federal statute and

specific Congressional intent to permit removal will not be required (Defs.' Letter of 6/20/03 at 2), two

points relied on in the prior remand decision.  Wireless Tel., 216 F. Supp. 2d at 494.  I also agree that

the defendants' position is strengthened somewhat by the emphasis in Beneficial National Bank on the

unique interest in uniform national rules that limit the liability of federally-chartered national banks, an

argument that resonates in this litigation as well.  The need for national uniformity in the regulation of cell

phone RFR emissions undoubtedly provides a strong argument for ordinary conflict preemption, see

Wireless Tel., 248 F. Supp. 2d at 463-67, but this factor is not sufficient to overcome the lack of

Congressional intent and other factors weighing against a finding of complete preemption.        As I

noted in Wireless Telephone, 216 F. Supp. 2d at 496, a number of federal district and appellate courts

---

[15]  The other two federal statutes are the Labor Management Relations Act, 29 U.S.C. § 185,
and the Employee Retirement Income Security Act, 29 U.S.C. § 1132.  The Supreme Court also has
held that possessory land claims under state law brought by Indian tribes are federal claims, "because
of the uniquely federal nature and source of the possessory rights of Indian tribes."  Beneficial Nat'l
Bank, 539 U.S. at 8 n.4 (internal quotation marks omitted).

have concluded that the cited provisions of the FCA do not provide removal jurisdiction under a

complete preemption theory.  Even more recent decisions are in accord with this view, including several

decisions since Beneficial National Bank.  See Gattegno v. Sprint Corp., 297 F. Supp. 2d 372, 376-77

(D. Mass. 2003); Lewis v. Nextel Communications, Inc., 281 F. Supp. 2d 1302, 1305-06 (N.D. Ala.

2003); Moriconi v. AT&T Wireless PCS, LLC, 280 F. Supp. 2d 867, 876-77 (E.D. Ark. 2003);

Russell v. Sprint Corp., 264 F. Supp. 2d 955, 961 (D. Kan. 2003); State ex rel. Nixon v. Nextel W.

Corp., 248 F. Supp. 2d 885, 891-93 (E.D. Mo. 2003); TPS Utilicom Servs., Inc. v. AT&T Corp.,

223 F. Supp. 2d 1089, 1100 (C.D. Cal. 2002); Threadgill v. Cingular Wireless, LLC, 223 F. Supp.

2d 786, 788-89 (E.D. Tex. 2002).  A contrary decision finding complete preemption under section

332(c)(3)(A), Bastien v. AT&T Wireless Services, Inc., 205 F.3d 983 (7th Cir. 2000), since has been

limited by Fedor v. Cingular Wireless Corp., 355 F.3d 1069, 1072-74 (7th Cir. 2004), which held that

state law claims for breach of contract, consumer fraud, and unjust enrichment based on allegations of

improper billing fall outside of the scope of section 332(c)(3)(A) and thus are not preempted.[16]

The plaintiffs raise several possible arguments against a finding of complete preemption in these

actions, which the court previously has recognized.  First, the plaintiffs' claims do not easily fit within the

narrowly-drawn terms of sections 332(c)(3)(A) and 332(c)(7)(B)(iv).  See Wireless Tel., 216 F.

Supp. 2d at 497.  The narrow scope of these provisions is illustrated further by the recent decision in

Fedor.  Second, most courts will not find complete preemption unless the federal statute at issue

contains a civil enforcement provision that encompasses the plaintiff's claims.  See, e.g., King v.

---

[16]  The defendants in this litigation have relied on Bastien in their briefs.  (See, e.g., Morganroth Defs.' Consol. Opp. Mem. at 6, 8, 21.)

15

Marriott Int'l, Inc., 337 F.3d 421, 425, 427-28 (4th Cir. 2003); cf. Beneficial Nat'l Bank, 539 U.S. at 8, 9.  As I noted in the prior remand decision, there are serious questions whether the state law claims raised in this litigation fall within the civil enforcement provisions of the FCA.  See Wireless Tel., 216 F. Supp. 2d at 496 n.22.  This is an even greater concern for the Morganroth actions than in the Pinney actions, because of the apparent lack of any federal remedy that would provide the compensatory damages sought by these plaintiffs, as discussed infra.  As the plaintiffs note, the lack of an available remedy would distinguish this litigation from Beneficial National Bank.

I do not need to resolve these specific arguments, because the cited provisions of the FCA do not evidence Congressional intent to completely preempt state law claims.  In Beneficial National Bank, 539 U.S. at 9-11, the Court confirmed that Congressional intent remains the critical inquiry, now stated as intent for the federal statute to provide the exclusive cause of action.  The FCA provisions cited by the defendants preserve significant authority for state and local governments, which is inconsistent with Congressional intent to completely preempt state law claims.  See Lewis, 281 F. Supp. 2d at 1306 (holding, in a post-Beneficial National Bank decision, that § 332(c)(3)(A) does not completely preempt state law claims, relying in part on its limited statutory language); Moriconi, 280 F. Supp. 2d at 874 (same).[17]  Moreover, unlike the National Bank Act and the two other federal statutes under which the Supreme Court has found complete preemption, the FCA contains a savings clause providing: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or

---

[17]  Section 332(c)(3)(A) expressly preserves state and local authority over "other terms and conditions of commercial mobile services."  Section 332(c)(7)(A) expressly preserves state and local authority "over decisions regarding the placement, construction, and modification of personal wireless service facilities."

by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414. <u>See</u> <u>Lewis</u>, 281 F. Supp. 2d at 1305-06 (relying in part on the FCA's savings clause to deny complete preemption under § 332(c)(3)(A)); <u>Moriconi</u>, 280 F. Supp. 2d at 874 (same). Congressional intent remains critical in the wake of <u>Beneficial National Bank</u>, and bars a finding of complete preemption under the cited provisions of the FCA over the Morganroth complaints.

## IV. Substantial Federal Question Jurisdiction

The exercise of federal jurisdiction in the prior remand decision rested on the substantial federal question doctrine. This exception to the well-pleaded complaint rule applies only to the "small class of cases where, even though the cause of action is not created by federal law, the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331." <u>Dixon</u>, 369 F.3d at 816 (quoting <u>Ormet Corp. v. Ohio Power Co.</u>, 98 F.3d 799, 806 (4th Cir. 1996)).[18] The doctrine permits removal where "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." <u>Interstate Petroleum Corp.</u> <u>v. Morgan</u>, 249 F.3d 215, 219 (4th Cir. 2001) (en banc) (quoting <u>Franchise Tax Bd.</u>, 463 U.S. at 27). Even the presence of a substantial federal question will not justify removal unless "<u>every</u> legal theory supporting the claim requires the resolution of a federal issue." <u>Dixon</u>, 369 F.3d at 816. "[I]f a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not

---

[18] The Court in <u>Beneficial</u> did not mention the presence of a substantial federal question as a ground for removal. <u>See</u> <u>Beneficial National Bank</u>, 539 U.S. at 8 & n.4. As the Fourth Circuit, however, continues to recognize this basis for removal, I shall do the same.

exist." Mulcahey, 29 F.3d at 153 (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800,

811 (1988)).

Whether a federal issue is sufficiently substantial turns on "the degree to which federal law must

be in the forefront of the case and not collateral, peripheral or remote." Mulcahey, 29 F.3d at 152

(quoting Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 813 n.11 (1986)). "The

determination of whether a federal issue is sufficiently substantial should be informed by a sensitive

judgment about whether the existence of federal judicial power is both appropriate and pragmatic."

Ormet, 98 F.3d at 807 (citing Merrell Dow, 478 U.S. at 813-14). This judgment may be informed by

an interest in uniform interpretation in certain areas of federal law:

> Where the resolution of a federal issue in a state-law cause of action could, because of
> different approaches and inconsistency, undermine the stability and efficiency of a
> federal statutory regime, the need for uniformity becomes a substantial federal interest,
> justifying the exercise of jurisdiction by federal courts.

Ormet, 98 F.3d at 807. In Ormet, the plaintiff's claim turned on the meaning of terms used in the

federal Clean Air Act, and the Fourth Circuit expressed concern that differing state interpretations

could undermine the comprehensive regulatory scheme for pollution emissions allowances established

under the Act and its implementing regulations. See id. at 807; but cf. Merrell Dow, 478 U.S. at 815-

16 (rejecting the plaintiff's argument that federal removal jurisdiction was justified because of "a

powerful federal interest in seeing that [the federal Food, Drug, and Cosmetic Act] is given uniform

interpretations").[19]

---

[19] The First Circuit recently declined to reach the same result as Ormet in a case involving a
similar issue under the Clean Water Act, concluding that the federal issue was not substantial enough to

In <u>Merrell Dow</u>, the Supreme Court recognized a significant limitation on the scope of the substantial federal question doctrine, holding that a state law claim alleging a violation of a federal statute as an element is not removable when Congress has not provided a private federal remedy for such a violation. <u>See</u> 478 U.S. at 817. The Court reasoned:

> [T]he congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.

<u>Id.</u> at 814. In such a case, it would "flout, or at least undermine congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction" based on the incorporation of this federal question into a state law claim. <u>Id.</u> at 812. The Fourth Circuit has extended this logic to bar removal of a state law claim incorporating a federal statute even when that statute provides a private right of action, if the plaintiff is procedurally or substantively barred from proceeding directly under the federal statute in question. <u>See</u> <u>Dixon</u>, 369 F.3d at 819; <u>Mulcahey</u>, 29 F.3d at 152-53.

In the prior remand decision, I held that federal question jurisdiction could be exercised over the <u>Pinney</u> actions under the substantial federal question doctrine, because the plaintiffs' complaints raised substantial issues under the FCA and the FCC's implementing regulations on RFR emissions from cell phones. <u>Wireless Tel.</u>, 216 F. Supp. 2d at 482-92. Based on the narrow definition of the class and the relief requested, it was apparent that the goal of those class actions was to attack the

---

confer removal jurisdiction. <u>See</u> <u>Templeton Bd. of Sewer Comm'rs v. Am. Tissue Mills of Mass., Inc.</u>, 352 F.3d 33, 39-41 (1st Cir. 2003).

FCC regulations for not requiring that cell phones come equipped with headsets. Id. at 488-89. The

FCC has already considered and rejected a headset requirement, id. at 489 & n.17, and indeed has

warned that some shielding devices can lead to an increase in RF absorption.[20] I recognized that "the

risk of fifty different states articulating fifty different rules about whether and to what extent they may set

RF safety standards could create market instability and prevent the maintenance of an unimpeded

national network of rapid and efficient telecommunications service." Id. at 491. Under these

circumstances, as in Ormet, "the need for uniformity becomes a substantial federal interest, justifying the

exercise of jurisdiction by federal courts." Id. at 490 (quoting Ormet, 98 F.3d at 807).

In this respect the arguments in favor of exercising removal jurisdiction over the Morganroth

complaints are just as strong. As in the Pinney actions, these complaints "put the validity of the federal

regulations, and the process by which they were developed, directly into dispute." Id. at 488. For

example, the Morganroth plaintiffs' claims for product liability, breach of express and implied

warranties, and negligence are supported by three theories, each of which implicates the current FCC

regulations: the defendants' alleged failures to develop adequate SAR exposure limits and reliable

testing methods for SAR (Murray Compl. at ¶ 97, 103(a)), to provide adequate warnings or

---

[20] The current FDA/FCC joint website on cell phone safety addresses and rejects the need for
headsets, stating "there is no reason to believe that hands-free kits reduce risks" because "there are no
known risks from exposure to RF emissions from wireless phones." FCC & FDA, Cell Phone Facts:
Consumer Information on Wireless Phones, "Questions and Answers: Do hands-free kits for wireless
phones reduce risks from exposure to RF emissions?" available at www.fda.gov/cellphones/qa.html.
The website makes the same point against phone accessories that claim to shield the head from RFR
emissions, and also notes that "[s]tudies have shown that these products generally do not work as
advertised" and may lead to an increase in RF absorption. Id. at "Questions and Answers: Do wireless
phone accessories that claim to shield the head from RF radiation work?"

instructions to consumers regarding RFR emissions from their cell phones (id. at ¶ 98, 103(b), (d), (e),

109), and to incorporate safety devices into cell phone designs (id. at ¶ 96, 103(c), 109).  Under each

of these theories and causes of action, necessary elements of the plaintiffs' claims may well require a

court to determine if provisions of the FCC regulations–the SAR exposure limit and the allowance for

various testing methods–render cell phones defective and unreasonably dangerous, or not safe as

expressly warranted, or not safe enough to meet a reasonable standard of care, such that the

defendants can be held liable and/or required to provide additional or different safety devices or

warnings or instructions.  See, e.g., Webster v. Pacesetter, Inc., 259 F. Supp. 2d 27, 38 (D.D.C.

2003); Word v. Potomac Elec. Power Co., 742 A.2d 452, 459-60 (D.C. 1999); Johnson v. District

of Columbia, 728 A.2d 70, 77 n.3 (D.C. 1999); McNeil Pharm. v. Hawkins, 686 A.2d 567, 578

(D.C. 1996); D.C. Code Ann. §§ 28:2-313, 28:2-314.  The plaintiffs' right to relief under these claims

thus would depend on "a court evaluating the validity and sufficiency of the federal standards."

Wireless Tel., 216 F. Supp. 2d at 491.

        The critical difference between the Morganroth complaints and the Pinney actions, which

compels a different result, is the presence of plaintiffs who are seeking compensation for physical

injuries allegedly caused by exposure to RFR emissions from their cell phones.  In the Pinney

complaints, the proposed classes were limited to plaintiffs who had not been provided with a headset

and did not allege personal injuries, and their requested relief focused solely on the provision of

headsets.  These limitations in the Pinney actions were important in two respects.  First, the

Pinney plaintiffs could not establish that any of their claims were supported by an alternative state law

theory which would not require the resolution of any federal questions, which might have required

remand.  See Wireless Tel., 216 F. Supp. 2d at 491-92; cf. Dixon, 369 F.3d at 817-18.  Each count of each complaint raised a substantial federal question, by requesting the imposition of a state equipment requirement for cell phones, necessarily drawing into dispute the rejection of such a requirement by the FCC.

Second, the Pinney plaintiffs had several private federal remedies available which could have resulted in a headset requirement or comparable relief.  They could have filed a petition for reconsideration to challenge the FCC's final regulations, see 47 C.F.R. §1.429(a), or could have filed a petition with the FCC to amend or repeal the existing regulations and/or issue new regulations.  See id. § 1.401(a).  A similar action could have been brought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706.  In any of these actions, the plaintiffs could have raised many of the same arguments that were made in their complaints.  Cf. Cellular Phone Taskforce v. FCC, 205 F.3d 82, 88 (2d Cir. 2000) (considering a challenge under the APA to the FCC regulations); FCC Second Order at ¶¶ 2, 18, 25, 31-32, 39 (considering petitions for reconsideration to strengthen the RFR exposure limits).  I relied on the availability of these private federal remedies to distinguish the Pinney complaints from Merrell Dow and subsequent cases, which hold that the absence of a private federal remedy for the federal question raised in a plaintiff's claim indicates that the question is not sufficiently substantial to warrant removal jurisdiction.  See Wireless Tel., 216 F. Supp. 2d at 481 n.4; see also Merrell Dow, 478 U.S. at 814; Dixon, 369 F.3d at 819; Mulcahey, 29 F.3d at 152-53.

The Morganroth complaints only seek monetary damages for personal injuries, however, and

thus parallel the factual situation in Mulcahey.[21]  In that case, the plaintiffs alleged a state law claim for

negligence per se based on violations of federal environmental laws, and sought compensatory damages

and injunctive relief.  Mulcahey, 29 F.3d at 149-150.  Although the cited federal statutes could have

provided the plaintiffs with prospective enforcement relief or recovery of response costs, they would

not have provided compensatory damages for past injuries.  Id. at 150 & n.3.  The Fourth Circuit

remanded under Merrell Dow, based in part on the fact that the private federal remedies that were

available could not provide the requested monetary damages.  Id. at 152-53.  The court reasoned that

"because the remedy sought is unavailable here, 'a private cause of action' under Merrell Dow does

not, in truth, exist."  Id.  See also Wander v. Kaus, 304 F.3d 856, 859 (9th Cir. 2002) (remanding

claim for damages under a state law which incorporated a violation of the federal Americans with

Disabilities Act as a violation of state law, because the only federal remedy available was for injunctive

relief rather than compensatory damages); Jairath v. Dyer, 154 F.3d 1280, 1284 (11th Cir. 1998)

(same); Wagner v. Regent Inv., Inc., 903 F. Supp. 966, 969-70 (E.D. Va. 1995) (remanding where a

violation of the Americans with Disabilities Act was claimed to be negligence per se in a state tort law

action); Handyman Network, Inc. v. Westinghouse Savannah River Co., 868 F. Supp. 151, 154

(D.S.C. 1994) (remanding state tort and contract claims premised on violations of federal wage and

benefits laws and seeking compensatory damages, noting that no private federal remedy for

---

        [21]  Although the factual situations are parallel in this respect, there is a significant distinction
between the Morganroth state law claims and those in Mulcahey and Merrell Dow.  The Morganroth
plaintiffs are challenging the adequacy of a federal regulation.  In Mulcahey and Merrell Dow the
plaintiffs affirmed the adequacy of federal law, by relying on alleged violations of federal law to pursue
state law causes of action.  While this distinction may affect the ultimate disposition of the claims, it does
not support removal where the only relief sought is not available under federal law.

compensatory damages is available).  The same argument applies to the Morganroth

complaints–because the plaintiffs cannot recover compensatory damages under any available federal

remedy, a private federal action does not exist as to their claims, and remand is required under Merrell

Dow and Mulcahey.

    The defendants suggest that the plaintiffs could seek compensatory damages under the FCA's

civil enforcement provisions, 47 U.S.C. §§ 201(b), 206, and 207,[22] but there are serious doubts as to

whether a cause of action under these provisions could compensate the plaintiffs for their personal

injuries.  Section 201(b) typically is invoked by private plaintiffs to challenge the rates or terms offered

by telecommunications providers.  See Boomer v. AT&T Corp., 309 F.3d 404, 420 n.9 (7th Cir.

2002) (recognizing that § 201(b) could be used to challenge arbitration clause in long-distance service

contract); Hi-Tech Furnace Sys., Inc. v. FCC, 224 F.3d 781, 784-85 (D.C. Cir. 2000) (challenging

change to terms of free long-distance calling program); Gilmore v. Southwestern Bell Mobile Sys., Inc.,

156 F. Supp. 2d 916, 924 (N.D. Ill. 2001) (challenging cell phone provider's "administrative" fee);

Lilley v. Paging Network of Ohio, Inc., 100 F. Supp. 2d 1144, 1145 (S.D. Ohio 2000) (challenging

change to terms of paging service contract); cf. Bryceland v. AT&T Corp., 122 F. Supp. 2d 703, 708-

09 (N.D. Tex. 2000) (finding that complaints regarding quality of wireless phone service could be

brought under § 201(b)); Himmelman v. MCI Communications Corp., 104 F. Supp. 2d 1, 5-6

---

[22]  Section 201(b) broadly prohibits any charge, practice, classification, or regulation "that is unjust or unreasonable."  Section 206 provides that a common carrier that violates any prohibition in the FCA is liable to injured persons for the full amount of damages sustained as a result, and section 207 provides that such injured persons may file a complaint with the FCC or file suit in federal district court.

(D.D.C. 2000) (reviewing complaints regarding manner in which directory assistance is provided under § 201(b)). Several courts have concluded that section 201(b) does not encompass claims for false advertising or consumer fraud, even when these claims are related to rates or billing practices. See Gilmore, 156 F. Supp. 2d at 924-25 (holding that state law fraud claim based on nondisclosure of rate information is not a claim under the FCA); Minnesota ex rel. Hatch v. Worldcom, Inc., 125 F. Supp. 2d 365, 372 (D. Minn. 2000) (holding that the FCA does not completely preempt state law claims for false advertising of long-distance rates, noting that the claim does not fall within the FCA's civil enforcement provisions); Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc., 958 F. Supp. 947, 955-56 (D. Del. 1997) (finding that claim alleging provider failed to disclose a billing practice does not fall within the scope of section 201(b)); cf. Rivera-Lebron v. Cellular One, 13 F. Supp. 2d 235, 240-41 (D.P.R. 1998) (holding that allegations that plaintiffs were incorrectly issued a cell phone and billed at the wrong address fails to state a claim under the FCA). The defendants cannot cite any case in which plaintiffs proceeding under the FCA have been able to recover compensatory damages for personal injuries.

In the face of this uncertain authority, I am mindful of the Fourth Circuit's recently reiterated admonition that removal jurisdiction must be strictly construed, and that remand to state court is required if federal jurisdiction is doubtful. See Dixon, 369 F.3d at 816. The defendants have not carried their burden of establishing removal jurisdiction under the substantial federal question doctrine, because they have failed to demonstrate the availability of a private federal remedy addressing the federal questions raised in the Morganroth complaints.

**V.**

25

For the reasons stated above, the <u>Murray</u>, <u>Schofield</u>, <u>Cochran</u>, <u>Keller</u>, <u>Schwamb</u>, and <u>Agro</u> complaints will be remanded to the Superior Court for the District of Columbia.

A separate order follows.


    July 19, 2004                              /s/           

Date                                         Catherine C. Blake

                                        United States District Judge